# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARITO SERRATO,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL[1],<br>Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:18-cv-00260 - JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF MARGARITO SERRATO, AND AGAINST DEFENDANT ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY |

Margarito Serrato asserts he is entitled to a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the ALJ erred in evaluating the medical record and seeks judicial review of the administrative decision denying his applications for benefits. Because the ALJ failed to apply the proper legal standards in rejecting limitations identified by Plaintiff's treating physician, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## **BACKGROUND**

In May 2013, Plaintiff filed his applications for benefits, in which he alleged disability beginning March 7, 2012, due to a herniated disc, knee problems, and high blood pressure. (Doc. 18-4 at 2; *see also* Doc. 18-3 at 27) The Social Security Administration denied his applications at the initial

---

[1] This action was originally brought against Nancy A. Berryhill in her capacity as then-Acting Commissioner. Andrew M. Saul, the newly appointed Commissioner, has been automatically substituted. *See* Fed. R. Civ. P. 25(d).

1

level and upon reconsideration. (*See generally* Doc. 18-4) Plaintiff requested a hearing and testified before an ALJ on June 23, 2016. (Doc. 18-3 at 27, 46) The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on August 3, 2016. (*Id.* at 27-36) Plaintiff filed a request for review of the decision with the Appeals Council, which denied the request on December 19, 2017. (*Id.* at 2-4) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

**STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

**DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

| | |
|---|---|
| 1 | 42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v.* |
| 2 | *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, |
| 3 | the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial |
| 4 | gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984). |

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

**A. Medical Background and Opinions**

In March 2011, Plaintiff reported "he was walking around his truck when he stepped in a hole twisting the left ankle" while at work. (Doc. 18-9 at 25) The following day, he said "he developed some pain radiating up from the ankle into his left hip and back." (*Id.*) Dr. Antonio Durazo diagnosed Plaintiff with "[l]eft ankle strain, mild" and "[p]ossible sciatica." (*Id.*)

In September 2011, Plaintiff had an MRI on his lumbar spine. (Doc. 18-9 at 27) Dr. Thu Le determined Plaintiff had "mild straightening of the lumbar lordotic curvature," and a disc bulge at the L5-S1 level, "with mild L5-S1 lateral recess stenosis, affecting the left S1 intraspinal nerve roots." (*Id.*) Dr. Le opined Plaintiff did not have "significant canal or neural foraminal stenosis throughout the lumbar spine." (*Id.*) Dr. Durazo noted Plaintiff "was not interested in pursuing neurosurgical consultation or undergoing invasive procedures, such as epidural injections." (*Id.* at 20) In addition, Plaintiff "continued to work as a truck driver" and "had no time to go to physical therapy or see a chiropractor, because of his work schedule." (*Id.*)

Dr. Durazo completed a "Primary Treating Physician's Permanent and Stationary Report" on November 4, 2011. (Doc. 18-9 at 19-24) Dr. Durazo noted that as time passed, "it became more clear

that [his] injury was the low back and the pain in the ankle was radicular symptoms." (*Id.* at 20) Plaintiff had positive straight leg raise tests at 100 degrees on the right and 80 degrees on the left. (*Id.* at 21) Dr. Durazo found Plaintiff "was able to stand on his toes and on his heels," and he had no sensory deficits. (*Id.*) Dr. Durazo determined Plaintiff could lift and carry 50 pounds occasionally and frequently, stand and walk less than eight hours per day, sit less than eight hours per day, and push and pull without limitation. (*Id.* at 22) Dr. Durazo opined Plaintiff could perform postural activities on a frequent basis. (*Id.* at 23) He concluded that with these limitations, Plaintiff could return to his usual occupation. (*Id.*) The following month, Plaintiff was laid off work. (Doc. 18-10 at 4)

Plaintiff was treated at the Spine and Orthopedic Center by Dr. Alan Moelleken and Josie Kozloff, PA. (*See* Doc. 18-13 at 73-75) On April 4, 2012, Plaintiff reported his pain was "5/10," and he continued to describe radiating pain to his lower left side. (*Id.*) He believed that acupuncture, chiropractic treatment, and a home exercise program helped decreased his pain. (*Id.*) Dr. Moelleken determined Plaintiff had "[d]ecreased sensation in the left L4 dermatomes," and decreased "strength of the left psoas, quadriceps, and hamstrings." (*Id.*) In addition, Plaintiff had a positive straight leg raise test on the right side. (*Id.*) Dr. Moelleken opined Plaintiff should "[l]imit lifting, pushing, and pulling to 10 pounds," and "[l]imit sitting, standing, and walking to 20 minutes with a 5-minute break or change in position." (*Id.* at 74) He also concluded Plaintiff could not bend, stoop, squat, or twist. (*Id.*)

Dr. Seymour Alban performed an agreed medical examination on February 22, 2013. (Doc. 18-10 at 2) Dr. Alban noted that Plaintiff received several low back chiropractic adjustments and acupuncture sessions, "which helped temporarily." (*Id.* at 3) Dr. Alban observed that Plaintiff had a "[s]light right paralumbar spasm" and Plaintiff exhibited tenderness in the lumbosacral spine, sacroiliac spine, paralumbar muscle, and sciatic nerve. (*Id.* at 9) Dr. Alban opined Plaintiff was "precluded from repetitive bending, stooping, and heavy lifting;" and he could "return to driving or other work that does not require heavy lifting, pushing, pulling, prolonged sitting and prolonged weight bearing." (*Id.* at 12) Dr. Alban believed Plaintiff's "condition [could] be considered to be permanent and stationary as he [wished] to defer or avoid surgery." (*Id.*) According to Dr. Alban, if Plaintiff chose, "it [would be] reasonable that he have decompression at the lumbosacral and possible L4-5 levels." (*Id.*) Dr. Alban also noted that if Plaintiff elected to have the surgery, he would "require several months to a year of

rehabilitation until he reaches maximum medical improvement." (*Id.* at 13)

In June 2013, Dr. Moelleken performed a partial laminectomy at the L4, L5, and S1 levels, as well as "[m]icrodissection, caudia equina and nerve roots." (Doc. 18-16 at 38) Dr. Moelleken noted that Plaintiff had "significant" foraminal stenosis at the L4-5 level, and "[m]ore than the normal amount of bone needed to be removed in the foramen." (*Id.* at 39) In addition, Dr. Molleken indicated he "tried to preserve as much of the facet joint as possible but it would have been impossible to decompress this area without removing a significant portion of the facet." (*Id.*)

Dr. Emmanuel Fabella performed a consultative examination on September 3, 2013. (Doc. 18-17 at 12) Plaintiff reported that after his back surgery, "his low back pain... decreased from what used to be constant [pain] ... to occasional to frequent, from what used to be severe [pain] to now mild to moderate." (*Id.*) He started that he had "residual pain with prolonged walking, standing, sitting and lifting." (*Id.* at 16) Dr. Fabella observed that Plaintiff had "a normal gait and balance, and [did] not require the use of assistive devices, although he ... use[d] a soft low back brace." (*Id.* at 14) He noted Plaintiff did not have any spinal or paraspinal tenderness. (*Id.* at 15) Plaintiff had a "mildly decreased" range of motion in his back, and the straight leg raise test caused "muscle tightness in the posterior thigh" at 30 degrees bilaterally. (*Id.*) Dr. Fabella opined Plaintiff was "able to lift and carry 10 pounds occasionally and less than 10 pounds frequently, limited due to low back pain and recent surgery." (*Id.* at 16) In addition, Dr. Fabella determined Plaintiff was "able to stand and walk four hours or less out of an eight-our day;" "walk on uneven terrain occasionally;" and "climb, balance, knee, and crawl only occasionally." (*Id.*)

On September 12, 2013, Plaintiff began physical therapy for low back rehabilitation. (*See* Doc. 18-17 at 22) He had twelve therapy sessions, ending on October 21, 2013. (*Id.*) Kelly Edwards, PT, believed Plaintiff "made good overall progress," with "improved mobility" and "decreased point tenderness of [his] left lumbar paraspinals." (*Id.*, emphasis omitted) She noted Plaintiff continued to have a "mild complaint of left sided low back pain and occasional sciatic symptoms," and "mild limitations [were] still evident in forward flexion of [the] lumbar spine." (*Id.*, emphasis omitted)

Dr. A. Nasrabadi reviewed available records and completed a physical residual functional capacity regarding Plaintiff's current ability on September 17, 2013. (Doc. 18-4 at 7-9) Dr. Nasrabadi

opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk about six hours in an eight-hour day, sit about six hours in an eight-hour day, perform all postural activities on an occasional basis. (*Id.* at 9-10) According to Dr. Nasrabadi, Plaintiff should also be able to perform light work by June 2014 following a recovery period. (*Id.* at 10)

Plaintiff "continue[d] to see Dr. Moelleken for spine complaints." (*See* Doc. 18-21 at 3) In January 2014, Dr. Moelleken referred Plaintiff for a functional capacity assessment by Tony Kim, DC, at the Spine and Orthopedic Center. (*Id.* at 10) Mr. Kim determined Plaintiff's lumbar flexion was normal, but he was limited to 56% of the normal range for extension, 52% of normal for left lateral movements, and 56% of normal for right lateral movements. (*Id.* at 11) Plaintiff stopped when he was squatting "due to increased pain on his back, bilateral quads and calves." (*Id.* at 12) Mr. Kim concluded Plaintiff's limitations and abilities were as follows: "[s]quatting no more than infrequent, floor and knee lift no more than 20 lbs, shoulder and overhead lift no more than 10 lbs, carry no more than 30 lbs, and prolonged sitting no more than 30 minutes at a time." (*Id.* at 14, emphasis omitted)

Dr. Roger Fast reviewed Plaintiff's medical records and completed a current residual functional capacity assessment on February 19, 2014. (Doc. 18-4 at 37-38) Dr. Fast opined Plaintiff was able to perform light work with occasional postural activities due to his lumbar degenerative disc disease, "left knee arthropathy and ankle tendonitis." (*Id.* at 38) He believed Plaintiff did not have any environmental limitations. (*Id.*)

Dr. Moelleken completed a physical medical source statement on October 28, 2014. (Doc. 18-22 at 47) He noted Plaintiff's symptoms included "[a]ching pain and numbness in the bilateral upper extremities, radiating into his bilateral hands," as well as pain in his "lower back, right knee and ankle." (*Id.*) According to Dr. Moelleken, Plaintiff exhibited "positive tenderness to palpation of the bilateral lumbar paraspinal muscles with the left being more than the right." (*Id.*) He indicated Plaintiff's "impairments lasted or … [could] be expected to last at least twelve months." (*Id.*) Dr. Moelleken opined Plaintiff could walk for two city blocks without rest or severe pain; sit for thirty minutes at one time; stand for twenty minutes at one time; and sit, stand, or walk, for less than two hours in an eight-hour day. (*Id.* at 48) Dr. Moelleken indicated Plaintiff needed to be able to shift positions at will from sitting, standing, or walking; and he would need unscheduled breaks approximately "every hour" due to

muscle weakness, chronic fatigue, and pain/paresthesias, numbness. (*Id.*) Further, Dr. Moelleken opined Plaintiff could lift 10 pounds occasionally and 20 pounds rarely; and never twist, stoop, crouch, or crawl. (*Id.* at 49) He believed Plaintiff was limited to fine manipulation 20% of an eight-hour day, reaching in front of his body 10% of an eight-hour day, and reaching overhead 10% of a workday. (*Id.*) Dr. Moelleken concluded Plaintiff was likely to miss more than four days per month due to his impairments or treatment. (*Id.* at 50)

In February 2015, Plaintiff was treated at the Spine and Orthopedic Center and "denie[d] any new symptoms or significant changes to his condition." (Doc. 18-23 at 31) Plaintiff stated his surgery and physical therapy "provided minimal benefit." (*Id.*) Dr. Thomas Jacques and Kevin Groh, PA-C, observed that Plaintiff walked with a "mildly slow and antalgic" gait. (*Id.* at 32) Plaintiff had "[d]ecreased sensation to pinprick in the left L4 and L5 dermatomes," and positive straight leg raise tests at 70 degrees with the left leg and 80 degrees on the right leg. (*Id.*) Plaintiff was prescribed Relafen "to be used twice per day to decrease his pain and improve his ability to participate in a home exercise plan," as well as Prilosec, Gabapentin cream, and a trial of Ultracet. (*Id.* at 32)

In June 2015, Plaintiff described "recurring symptoms with worse pain on the right side of the body." (Doc. 18-23 at 26) Plaintiff stated he had "an aching pain in his upper back, about the shoulder blades radiating down to the mid back," which he described as "5-6/10 on the pain scale." (*Id.*) He also reported "an aching and stabbing pain with numbness in the low back which he rate[d] as a 6-7/10 on the pain scale." (*id.*) Plaintiff reported he used a lumbar corset for stability, and he was "only able to sit and walk for 30 minutes and stand for 20 minutes comfortably." (*Id.*) He stated his medication "provide[d] minimal benefit without only about 25% pain reduction," though it helped him "stand for a bit longer and do more around the house." (*Id.* at 27) Upon examination, Dr. Jacques and Nathan Allen, PA-C, opined Plaintiff continued to have "[d]ecreased sensation to pinprick in the left L4 and L5 dermatomes," positive straight leg raise tests on both the left and right, and a slightly reduced motor strength with his left leg muscles. (*Id.* at 27) Plaintiff also continued to walk with a "mildly slow and antalgic" gait. (*Id.*)

Dr. Jacques and Mr. Allen opined Plaintiff had "very mild tenderness to palpation of the bilateral lumbar paraspinals muscles with the right being greater than the left" in December 2015.

(Doc. 18-23 at 18) In addition, Plaintiff exhibited decreased sensation to pinprick, a slightly decreased motor examination in the left leg, and positive straight leg raise "on the left at 70 degrees with low back pain extending to the knee and at 80 degrees on the right with low back pain extending to the thigh." (*Id.*) Dr. Jacques and Mr. Allen recommended Plaintiff "continue with a home exercise program for his long-term benefit," and he continued to take Relafen, Prilosec, and Ultracet, and to use the Gabapentin cream. (*Id.*)

Dr. Dale Van Kirk performed a comprehensive orthopedic evaluation on March 12, 2015. (Doc. 18-23 at 2) Plaintiff stated his surgery "did not help to any great degree," and the "chiropractic, physical therapy and acupuncture... did not help the knees or the back." (*Id.* at 3) Plaintiff reported that he used a lumbar corset frequently, which was prescribed by a doctor. (*Id.* at 3-4) Dr. Van Kirk observed that Plaintiff was able to walk around the room and get on and off the examination table without difficulty. (*Id.* at 4) Plaintiff "was able to squat about halfway down but could go no further" and "bend over to within eight inches of touching the floor with his long fingers." (*Id.* at 5) Dr. Van Kirk determined Plaintiff had normal motor strength in the upper and lower extremities, including grip strength. (*Id.* at 6) Plaintiff's patellar reflexes were 1+/4, and his deep tendon reflexes were "present only in the biceps reflexes in the upper extremities." (*Id.*) Dr. Van Kirk noted Plaintiff's impairments included "[i]nternal derangement of the knees bilaterally with patellofemoral chondromalacia on the right side and, on the left side, early osteoarthritis;" "[r]otator cuff tendonitis of the shoulders bilaterally," and "[s]tatus-post lumbar decompressive surgery with residual pain." (*Id.*) Dr. Van Kirk opined Plaintiff "should be able to stand and/or walk cumulatively for six hours out of an eight-hour day," sit without limitation," and "lift and carry frequently 25 pounds and occasionally 50 pounds." (*Id.*) He believed Plaintiff could perform postural activities on a frequent basis, but should be limited to occasional crouching and crawling. (*Id.* at 6, 10) In addition, Dr. Van Kirk opined Plaintiff "should not be required to work in an extremely cold and/or damp environment;" and be should be limited to frequent exposure to dust, odors, fumes, pulmonary irritants, and vibrations. (*Id.* at 7, 13)

**B.     Administrative Hearing Testimony**

Plaintiff testified before an ALJ at a hearing held on June 23, 2016. He stated that he was unable to work because he had "a lot of pain in [his] lower back," which went to his legs. (Doc. 18-3 at

57) He stated he also had pain in his upper back, mid-back, and knees. (*Id.*) Plaintiff believed his back surgery did not improve his condition, and physical therapy provided only temporary relief. (*Id.* at 57-58) He reported his pain increased with activity or if he sat "too long in the same position." (*Id.* at 59)

Plaintiff said that on a typical day, he would eat, listen to the radio, watch television, use the computer, and read. (Doc. 18-3 at 60) He stated on some days he would go to church and walk half a mile to 3/4 of a mile. (*Id.*) Plaintiff testified that he could do some household chores such as making the bed, laundry, heating food, and taking out the trash. (*Id.* at 62)

Plaintiff estimated he could sit for about 30 minutes at one time, or four hours in an eight-hour day; stand "maybe 20 minutes" before he needed to sit, or for a total of an hour and half in an eight-hour day; and walk two hours in an eight-hour day. (Doc. 18-3 at 61, 65) He stated the rest of the day he was laying down, and estimated he napped thirty minutes each day. (*Id.* at 61, 65) Plaintiff also reported he could lift and carry 20 pounds. (*Id.* at 61)

**C.     The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the alleged onset date of March 7, 2012; and he met the insured status requirements through December 31, 2016. (Doc. 18-3 at 29) Second, the ALJ found Plaintiff had "the following severe impairments: lumbosacral degenerative disc disease with radiculopathy, status post-laminectomies; bilateral degenerative joint disease of the knees; and tendonitis." (*Id.*) At step three, the ALJ found Plaintiff's physical and mental impairments did not meet or medically equal a Listing. (*Id.* at 30-31) Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567 (c), and 20 CFR 416.967 (c), including lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and walking for six hours; and sitting for six-to-eight hours in an eight-hour workday with normal breaks and with the following restrictions: The claimant is capable of occasional balancing, stooping, kneeling, crouching, crawling, and climbing.

(*Id.* at 31)  With this residual functional capacity, the ALJ found at step four that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 37) Therefore, the ALJ concluded Plaintiff was not disabled from the alleged onset date of March 7, 2012,

through the date of the decision, August 3, 2016.  (*Id.* at 38)

## **DISCUSSION AND ANALYSIS**

Appealing the ALJ's decision, Plaintiff argues that the ALJ in evaluating the medical evidence, including the opinion from Dr. Moelleken, his treating orthopedic specialist.  (Doc. 22 at 17)  In addition, Plaintiff contends "no medical opinion rendered by an examining source agrees with the ALJ that Plaintiff can perform the significant standing/walking requirements of light work."  (*Id.*, emphasis omitted)  The Commissioner argues that "the ALJ properly rejected the opinion of Dr. Moelleken."  (Doc. 25 at 5, emphasis omitted)

**A.  Evaluation of Medical Opinions**

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability.  *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Further, an examining physician's opinion is given more weight than the opinion of non-examining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Thus, the courts apply a hierarchy to the opinions offered by physicians.

A physician's opinion is not binding upon the ALJ and may be discounted whether or not another physician contradicts the opinion.  *Magallanes*, 881 F.2d at 751.  An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only by identifying "clear and convincing" reasons.  *Lester*, 81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record."  *Id.*, 81 F.3d at 830.  When there is conflicting evidence, "it is the ALJ's role to determine credibility and to resolve the conflict."  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  The ALJ's resolution of a conflict must be upheld when there is "more than one rational interpretation of the evidence."  *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the

evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").

Explaining the weight given the medical opinions in the record, the ALJ addressed the opinions of Dr. Moelleken by stating:

> On April 4, 2012, treating physician Dr. Moelleken opined the claimant was temporarily disabled. He was limited to lifting, pushing, and pulling up to 10 pounds. He was limited to sitting, standing, and walking for 20 minutes, then a 5-minute break or change in position. He could not bend, stoop, squat, or twisting (Exhibit 4F, p. 169). This opinion was given very little weight because it was before the claimant underwent back surgery, and the evidence showed the claimant had significant improvement following surgical intervention. On October 28, 2014, Dr. Moelleken also opined the claimant was precluded from sedentary work, and he could sit for less than 2 hours, and stand or walk for less than 2 hours (Exhibit 14F, p. 3). He would miss more than four days per month of work (Exhibit 14F, p. 5). **This opinion was given very little weight because it was before the claimant underwent back surgery, and the evidence showed the claimant had significant improvement following surgical intervention**.

(Doc. 18-3 at 36, emphasis added) Plaintiff contends these were not legally sufficient reasons for rejecting the opinions of Dr. Moelleken. (Doc. 22 at 17, 20-21) Because the limitations identified by Dr. Moelleken conflicted with the opinions of Drs. Van Kirk, Nasrabadi, and Fast, the ALJ was required to identify specific and legitimate reasons to reject the limitations identified by Dr. Moelleken.

### 1. Date of opinion

As an initial matter, one reason identified by the ALJ for his rejection of the limitations identified by Dr. Moelleken in October 2014 was that the opinion was authored "before the claimant underwent back surgery." (Doc. 18-3 at 36) However, Plaintiff's back surgery—performed by Dr. Moelleken— occurred in June 2013 (*see* Doc. 18-16 at 28) and the opinion clearly post-dates the surgery. Indeed, Dr. Moelleken referenced Plaintiff's surgery in his medical source statement, noting Plaintiff's status was "post MLD L4-L5." (*See* Doc. 18-22 at 47) Consequently, the ALJ erred in rejecting the opinion of Dr. Moelleken on this basis.

### 2. Conflict with the medical record

The only other reason identified by the ALJ for rejecting the limitations identified by Dr. Moelleken in October 2014 was that "the evidence showed the claimant had significant improvement following surgical intervention." (Doc. 18-3 at 36) In contrast, the ALJ gave "significant weight" to the opinions of Drs. Nasrabadi and Fast "because they were consistent with the medical record." (*Id.*)

Thus, the ALJ indicated the opinion of Dr. Moelleken conflicted with other evidence in the record.

The Ninth Circuit determined an ALJ may reject limitations "unsupported by the record as a whole." *Mendoza v. Astrue*, 371 Fed. Appx. 829, 831-32 (9th Cir. 2010) (citing *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003)). However, when an ALJ believes the treating physician's opinion is unsupported by the objective medical evidence, the ALJ has a burden to "set[] out a detailed and thorough summary of the facts *and conflicting clinical evidence*, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) (emphasis added); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). For example, an ALJ may also discount the opinion of a treating physician by identifying an examining physician's findings to the contrary and identifying the evidence that supports that finding. *See, e.g., Creech v. Colvin*, 612 F. App'x 480, 481 (9th Cir. 2015).

Significantly, the ALJ failed to identify how the limitations identified by Dr. Moelleken in October 2014 were not consistent with the record. Likewise, the ALJ fails to identify any evidence in the record supporting his conclusion that Plaintiff had, in fact, made "significant improvement" following surgery, or at the time Dr. Moelleken completed the medical source statement in October 2014.[2] Instead, the ALJ offered only a summary of the medical opinions in the record and his conclusion the limitations identified by Dr. Moelleken conflicted with the overall record. (*See* Doc. 18-3 at 35-36) Because the ALJ failed to identify specific evidence that conflicted with the limitations identified by Dr. Moelleken, the ALJ erred in evaluating the medical record and rejecting the opinion of Plaintiff's treating orthopedist.

**B.     Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*,

---

[2] Importantly, the Court is "constrained to *review* the reasons the *ALJ* asserts." *Brown-Hunter*, 806 F.3d at 494 (emphasis in original) (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)); *Bray v. Comm'r*, 554 F.3d 1219, 1229 (9th Cir. 2009) (the Court cannot engage in "*post hoc* rationalizations that attempt to intuit what the [ALJ] might have been thinking"). Although the Commissioner identifies evidence in the record to "support[] the ALJ's conclusion that Plaintiff's medical condition materially improved following back surgery on June 27, 2013," (*see* Doc. 25 at 7) this evidence was neither identified by the ALJ in his analysis of the medical opinions nor identified *by the ALJ* as conflicting with the opinion of Dr. Moelleken. Consequently, the Court is unable to find the conflicts now identified by the Commissioner support the ALJ's decision.

12

211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ erred in evaluating opinion of Plaintiff's treating physician and evaluating Plaintiff's impairments, particularly following his back surgery in June 2013. Because the ALJ failed to resolve conflicts in the medical record regarding Plaintiff's limitations and abilities, the matter should be remanded for further proceedings and for the ALJ to re-evaluate the medical evidence. *See Moisa*, 367 F.3d at 886

## **CONCLUSION AND ORDER**

For the reasons set forth above, the Court finds the ALJ erred in his evaluation of the medical record and failed to apply the correct legal standards. Consequently, the ALJ's decision cannot be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Accordingly, the Court **ORDERS**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Margarito Serrato, and against Defendant, Andrew M. Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **August 7, 2019**            **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE